## Case No. 11,140.

### In re PIERCE et al.

### Ex parte WHITE.

[2 Lowell, 343.][1]

District Court, D. Massachusetts. Nov., 1874.

BANKRUPT—SECURITY TO SURETY.

1. A mortgage given to a surety to indemnify him for undertaking to secure debts of a mortgagor, who afterwards became bankrupt, will be *held*, by a court of bankruptcy, to inure to the benefit of the creditors to whom the surety became bound; and the trust for the benefit of such creditors will be enforced by those courts.

2. Where such a mortgage is assigned to a purchaser, with notice of the trust, he takes the property upon the same trusts.

3. Where the money paid by such a purchaser is, in fact, applied to the payment of the debts which the mortgage was given to secure, the purchaser may have the benefit of such application.

4. But if the purchaser is himself a creditor under the mortgage, he has no priority over the other creditors, but must share with them if the security is inadequate to full payment.

5. An assignee in bankruptcy, who has taken chattels subject to such a mortgage, has no prior lien on it for rent of the place in which they were kept, if, being notified of the mortgage, he refused to deliver them to the mortgagee, and the rent accrued after such notice.

The bankrupt firm carried on business in Boston under the style of the Boston Drug Mills, as the successors of an earlier firm, consisting of the two bankrupts and one Lincoln. When the latter retired from the firm in December, 1872, the new firm undertook to pay the joint debts of the old firm, and they procured one Kendall to become bound with them to Lincoln in an obligation conditioned to pay all said debts as shown on the books of account of the firm, and especially six certain promissory notes, amounting to $3,400 signed by said Lincoln and indorsed by the Boston Drug Mills, and to save harmless said Lincoln against all said debts, liabilities, and notes. As security for this obligation, the new firm gave Kendall, the surety, a mortgage upon certain machinery, tools, and other chattels, which was conditioned to pay all the debts of the old firm, and to indemnify Kendall from his liability on the bond. In February, 1873, the new firm applied to E. A. White, the petitioner, to advance them $1,500, promising to procure him as security

1 [Reported by Hon. John Lowell, LL. D., District Judge, and here reprinted by permission.]

therefor an assignment of Kendall's mortgage. He advanced the money and received the assignment. After the bankruptcy of E. C. Pierce and others, White applied to have the mortgaged property sold, which was ordered, subject to the rights of all parties, and the assignee filed an account, showing a balance of about $1,000 as the net proceeds of sale. At the hearing there was evidence tending to show that the money thus obtained from Mr. White was applied to pay debts of the old firm. There was evidence that the notes for $3,400, mentioned in the mortgage to Kendall, had not been paid, and that there were other debts outstanding of the old firm; that Kendall and Lincoln were both bankrupt, and the interests of their creditors were insisted on by their assignees.

B. C. Moulton, for assignee.

G. W. Estabrook, for secured creditors.

LOWELL, District Judge. It is well settled that a mortgage by a principal to a surety to indemnify him for his undertaking, will inure to the benefit of the creditors to whom the surety has become bound, and that if the parties are bankrupt, the court of bankruptcy or a court of equity will enforce the trust for the benefit of such creditors. I refer to the very elaborate opinion of the late Judge Hall, in Re Jaycox [Case No. 7,242], where the authorities are reviewed, and the principle upheld; and in which the character of such a transaction as a trust is fully set out. In England this equity appears at the present day to be confined to cases in which both the principal and his surety are bankrupt or insolvent, and is held not to inure to the benefit of the class of creditors as such, but to be an incidental advantage which they obtain in working out the settlements of the two bankrupt estates. The earlier English doctrine of Maure v. Harrison, 1 Eq. Cas. Abr. 93, pl. 5, has been more closely followed in this country, and the better opinion here is, that when the principal is insolvent, the creditors may at once require the application of the security. Kendall's mortgage, however, was conditioned to pay the debts of the old firm, as well as to save him harmless therefrom, which would create a trust, even before bankruptcy; and both parties are now bankrupt. Kendall assigned this mortgage to a person who was lending money to the new firm. It is clear that such an assignment, for such a purpose, of a mortgage which clearly expresses the trust, is void in equity, and that White became merely the trustee in the place of Kendall. No layman even, reading such a mortgage, could for a moment suppose that it was intended, or could be used, as a security for new debts, at least until the old debts were all paid; and White made no inquiry concerning the old debts.

Fortunately for him the money appears to have been used to pay old debts; and this being the case, he may fairly claim to stand in the place of the creditors who were paid with the money which he lent. But his possession of the mortgage gives him no better right than all the other creditors of the old firm, because it was not assigned him for any such purpose. He was not responsible for the old debts, and did not undertake to pay them, and can only by subrogation claim the rights of a creditor.

If Kendall had paid certain debts without notice of the insolvency of the new firm, no doubt he might hold the mortgaged property, first to indemnify himself, and next to divide the proceeds of the property pro rata among the remaining creditors. But White was not in this position. He advanced money on a security which was not directly available to him, and he can derive no priority by the fact that he held a legal title.

It was argued that the holders of the notes mentioned in the mortgage are to have precedence of the other creditors of the old firm, by reason of the notes being specially referred to. But it is evident that these debts were not mentioned for that purpose, but merely to make sure that they were acknowledged as debts by the old firm. The bond and mortgage cannot be misunderstood. They are for all the debts, whether mentioned in the mortgage or shown in the books.

The assignee argued that he had a lien upon the mortgaged property for rent. It seems that the drug mills were in his possession for some time, and that the landlord makes some claim against him which is in suit; and the suggestion is, that if the machinery and tools conveyed by the mortgage had been removed, he would not have kept the premises so long as he did. If the assignee has become liable for rent, he has usually the right to pay it out of the assets in his hands; but, so far as this mortgaged property can be called assets, he has no claim of this sort upon it, because he resisted the mortgagee's right to sell or remove it, gave him no notice of any such possible claim, and has acted throughout adversely, taking his chance of setting aside the mortgage. Besides, the occupation of the premises was optional with the assignee. He was not bound to take the lease unless he pleased, and he might have taken care to secure himself by a guarantee from the creditors or otherwise against personal liability for the rent. If he did become liable he cannot call upon the mortgagee, or rather on the creditors of the old firm whom the mortgagee represents, to pay any part of this charge.

The order is, that the net proceeds of sale of the mortgaged property be divided among the creditors of the old firm, known as the Boston Drug Mills, pro rata.